# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1942 | **DATE** | 3/4/2004 |
| **CASE TITLE** | Cannon-Stokes vs. Potter | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Defendant's motion to dismiss [18-1] is denied. Defendant is directed to answer the amended complaint by 3/25/04. Status hearing is set for 4/20/04 at 9:30 a.m. Plaintiff's counsel is directed to send a copy of this decision to Alexander F. Knopfler and to the United States Bankruptcy Trustee.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **2** number of notices |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | | **MAR 0 5 2004** date docketed |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | JKM docketing deputy initials |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | 3/4/2004 date mailed notice |
| **MD** | courtroom deputy's initials | | **MD** mailing deputy initials |

Date/time received in central Clerk's Office

Document Number

27

TRACI CANNON-STOKES,        )
                                  )
     Plaintiff,              )
                                  )
          vs.                 )     No. 03 C 1942
                                  )     Judge Joan H. Lefkow
JOHN E. POTTER, Postmaster General,   )
United States Postal Service,       )
                                  )
     Defendant.            )
                                  )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Traci Cannon-Stokes ("Cannon-Stokes"), has filed an Amended Complaint against defendant, John E. Potter ("Potter"), Postmaster General, United States Postal Service ("USPS"), alleging in Count I discrimination based on disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq.*, and in Count II retaliation in violation of 42 U.S.C. §§ 2000e *et seq.* Before the court is Potter's motion to dismiss Cannon-Stokes' Amended Complaint. For the reasons stated below, the motion is denied.

### BACKGROUND

Cannon-Stokes is employed at the USPS facility in Bloomingdale, Illinois. Since 1995, she has suffered from Post Traumatic Stress Disorder, which Cannon-Stokes alleges is a permanent disability. In Count I of her Amended Complaint, she claims that employees of the USPS have harassed and discriminated against her on numerous occasions. These actions included (1) accusing her of moral problems because she was placed on light duty in 1996;

(2) ordering her to deliver mail on a residential route in April of 1996 and on several other occasions in violation of her medical restrictions; (3) refusing to transfer her to a different facility where her medical and work restrictions could be accommodated and refusing to assign her to a different craft where she could fully perform her job duties with reasonable accommodations; (4) repeatedly transferring her to different facilities without her request or approval and without regard to whether there were positions available within her medical restrictions; (5) informing her that there was nothing wrong with her and that she would be forced to deliver mail on the street as soon as she completed her fitness for duty examination; and (6) insisting that she sign her approval to a different job duty description in June of 2003 and refusing to allow her to perform her original limited job duty description.

For her Count II claim, Cannon-Stokes alleges that the USPS retaliated against her on numerous occasions since 1996 when she filed her charges of discrimination under the Rehabilitation Act. Cannon-Stokes states that such retaliation includes all acts 1-6 listed above.

Cannon-Stokes first filed a formal complaint of discrimination under the USPS' Equal Employment Opportunity procedures (herein, "EEO charge") on June 21, 1996. After an EEO Investigative Report was completed on August 4, 1999, Cannon-Stokes requested a hearing before an Administrative Judge on August 30, 1999. On November 8, 1999, Administrative Judge Margaret Lee Herbert set the case for trial on February 23, 2000. On December 3, 1999, Cannon-Stokes filed with the EEOC her "Statement of Relief Sought," in which she requested $300,000 as damages for the alleged employment discrimination. On February 24, 2000, Cannon-Stokes' claims were heard at trial by Administrative Judge Herbert. Administrative Judge Herbert ruled in favor of the USPS on January 11, 2001. On December 16, 2002, a final

decision was issued on Cannon-Stokes' discrimination claim when her Request for Reconsideration was denied. Cannon-Stokes received notice of this decision on December 20, 2002 and, thereafter, filed this action on March 18, 2003.

On July 28, 1998, while her administrative proceeding was pending, Cannon-Stokes filed a voluntary petition in bankruptcy under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, in the United States Bankruptcy Court for the Northern District of Illinois. Throughout her entire bankruptcy action Cannon-Stokes was represented by counsel. On January 21, 2000, she converted her Chapter 13 petition to one for liquidation of her assets under Chapter 7. During the pendency of her bankruptcy action, Cannon-Stokes did not disclose to the trustee or the court her pending administrative claim for employment discrimination against the USPS. In Schedule B of her bankruptcy petition, when asked to list "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counter claims of the debtor, and the rights to setoff claims," Cannon-Stokes listed "NONE." In item 4 of the Statement of Financial Affairs portion of her bankruptcy petition Cannon-Stokes was instructed to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." Cannon-Stokes responded "None." She also declared in a number of places in her bankruptcy petition that the information contained in her petition was true and correct under the penalty of perjury.

On April 19, 2000, bankruptcy trustee Alexander S. Knopfler made a "Finding of No Assets" on Cannon-Stokes' bankruptcy claim. On May 19, 2000, the bankruptcy court entered an order granting Cannon-Stokes a complete discharge of debts pursuant to 11 U.S.C. § 727. Cannon-Stokes' discharged unsecured debts totaled over $98,000.

3

## DISCUSSION

Potter has filed this motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure arguing that Cannon-Stokes' Amended Complaint fails to state a claim upon which relief may be granted on the basis that judicial estoppel bars her claims. Because estoppel is an affirmative defense, *see* Rule 8(c), and given that Cannon-Stokes has filed an affidavit to which Potter neither objects nor seeks to respond, the court shall consider Potter's motion as one for summary judgment on his affirmative defense.[1] As such, the facts as asserted by Cannon-Stokes are taken as established and the court will assess whether Potter is entitled to judgment as a matter of law. *See* Rule 56(c) (". . . The judgment sought shall be rendered forthwith if the [evidence submitted] show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.")

Potter asserts that because Cannon-Stokes obtained complete relief from her debts in her bankruptcy court action but never disclosed in her bankruptcy petition either her EEO charge against the USPS or the possibility that she would pursue her claims of employment discrimination against the USPS in this court, the doctrine of judicial estoppel is invoked and Cannon-Stokes' Amended Complaint must fail. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire* v. *Maine*, 532 U.S. 742, 749 (2001). The purpose of the doctrine is to protect "the integrity of the judicial process." *Id.* The Seventh Circuit has stated that judicial estoppel may apply when "(1) the later position is clearly

---

[1]Cannon-Stokes attaches an affidavit to her response to the motion to dismiss. Potter states that he has no objection to the court's converting the motion to one under Federal Rule of Civil Procedure 56 and that he has no additional documents to include for purposes of a converted motion.

4

inconsistent with the earlier position; (2) the facts at issue are the same in both cases; (3) the party to be estopped convinced the first court to adopt its position; and (4) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *United States* v. *Christian*, 342 F.3d 744, 747 (7th Cir. 2003). *But see In re Cassidy*, 892 F.2d 637, 641 n.2 (7th Cir. 1990) ("[P]rejudice to the opponent from the change of position is not a necessary element of judicial estoppel, thus contrasting judicial estoppel from the more familiar equitable estoppel."). While the Seventh Circuit has not yet determined whether judicial estoppel would bar claims filed in a separate action that were not disclosed in a previous bankruptcy filing, other courts have concluded that judicial estoppel applies in such situations. *See, e.g., Barger* v. *City of Cartersville*, 348 F.3d 1289, 1294-97 (11th Cir. 2003); *Krystal Cadillac-Oldsmobile GMC Truck, Inc.* v. *GMC*, 337 F.3d 314 (3d Cir. 2003); *Burnes* v. *Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1288 (11th Cir. 2002); *Hamilton* v. *State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-86 (9th Cir. 2001); *In re Coastal Plains, Inc.*, 179 F.3d 197, 208-09 (5th Cir. 1999); *Payless Wholesale Distribs., Inc.* v. *Alberto Culver (P.R.) Inc.*, 989 F.2d 570 (1st Cir. 1993).[2]

Clearly, most of the above listed judicial estoppel factors are satisfied here. For example, Cannon-Stokes is clearly taking a position that is inconsistent with an earlier position, as she asserted to the bankruptcy court that she had no contingent or unliquidated claims while at the same time pursuing claims against the USPS for $300,000. Also, the facts are identical insofar as the claim Cannon-Stokes failed to disclose is the identical claim she is asserting now.

---

[2]It is worth noting that most of these cases dealt with a situation in which a discharged debtor later sued a creditor whose interest had been omitted from the bankruptcy petition. *Barger* and *Burnes* are the only cases decided in the employment discrimination context.

Moreover, the bankruptcy court accepted the trustee's no asset report, which illustrates that Cannon-Stokes convinced the first court to adopt her position. The fourth factor is less clear, however, as it is difficult to see how Cannon-Stokes has received an unfair advantage from her inconsistent positions. Potter argues that Cannon-Stokes would derive an unfair advantage because had her claim for $300,000 been disclosed to the bankruptcy court, in all likelihood the finding of no assets would not have been entered and her debts would not have been discharged. This assertion is not substantiated by an affidavit from the bankruptcy trustee and, in reality, the trustee might rather have abandoned this contingent claim on the basis that it was "of inconsequential value and benefit to the estate." 11 U.S.C. § 554.

In any event, as the use of the word "may" suggests in the Seventh Circuit's discussion of these factors, the presence or absence of any one factor is not outcome determinative and the court must be mindful of other statements the Seventh Circuit has made concerning judicial estoppel. For example, judicial estoppel should only apply where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum designed for suitors seeking justice." *In re Cassidy*, 892 F.2d 637 at 641 (quoting *Scarano* v. *Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)); *see also*, *Chaveriat* v. *Williams Pipe Line Co.*, 11 F.3d 1420, 1428 (7th Cir. 1993) ("Judicial estoppel is strong medicine, and this has led courts and commentators to characterize the grounds for its invocation in terms redolent of intentional wrongdoing.").

Cannon-Stokes, in response to the motion, suggests a number of reasons why judicial estoppel should not be applied here. First, she maintains that many of the acts she complains of occurred after she filed for bankruptcy and after she received her discharge. For example, Cannon-Stokes reasons that because (a) she originally filed her bankruptcy petition under

6

Chapter 13 and that the petition was converted to one under Chapter 7 on January 7, 2001; (b) a Chapter 7 petition includes only the debtor's assets as of the date the petition was filed, 11 U.S.C. § 541; and (c) under 11 U.S.C. § 348(f)(1)(A), "when a case under Chapter 13 of this title is changed to a case under another chapter under this title, property of the estate in the converted case shall consist of property of the estate as of the date of the filing of the petition," then (d) any discriminatory action taking place after July 28, 1998 (when she filed the Chapter 13 bankruptcy) is not part of the bankruptcy estate and, therefore, judicial estoppel would not apply.

The problem with this argument, as Potter points out, is that the post-bankruptcy acts must either be "fairly encompassed" within Cannon-Stokes' prior EEO charge, *see Chambers* v. *American Trans Air, Inc.*, 17 F.3d 998, 1003 (7th Cir. 1994), or, if not, then she was required to file a new EEO charge in order to exhaust her administrative remedies. The more likely of the two is that her new claims of discrimination were fairly encompassed by her earlier charge, and because that charge was filed nearly two years before Cannon-Stokes' bankruptcy, this argument is rejected.

Cannon-Stokes next argues that the requirements for judicial estoppel to apply, that the two inconsistent positions must be related to the same facts and there must be evidence of bad faith, are not met here. If Cannon-Stokes means to suggest that it is relevant that the USPS was not a creditor in her bankruptcy proceeding, the court disagrees. While this is true of many of the cases that have applied judicial estoppel in this setting, "[t]he doctrine of judicial estoppel protects the integrity of the judicial system, not the litigants." *Burnes*, 291 F.3d at 1297. Therefore, "while privity and/or detrimental reliance are often present in judicial estoppel cases, they are not required." *Id.*; *see also, Ryan Operations G.P.* v. *Santiam-Midwest Lumber Co.*,

81 F.3d 355, 360 (3d Cir. 1996) ("The integrity of the court is affronted by the inconsistency notwithstanding the lack of identity of those against whom it is asserted."); *Muellner* v. *Mars, Inc.*, 714 F. Supp. 351, 356 (N.D. Ill. 1989) ("Because the purpose of judicial estoppel is to prevent a party from playing fast and loose with the courts, rather than to protect litigants, under the prevalent view there generally is no need to demonstrate detrimental reliance or privity of the adverse party.") (internal quotations and citations omitted).

With regard to bad faith, on the other hand, Cannon-Stokes is more persuasive. She argues that she disclosed her EEO charge to her attorney and he advised that the action did not have to be listed because it was still being investigated by an administrative agency. In response to this argument, Potter urges adoption of standards for intentional conduct used in both the Fifth and Eleventh Circuits. Those circuits have noted that a debtor's failure to disclose claims can only be construed as unintentional when "the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *In re Costal Plains, Inc.*, 179 F.3d at 210; *DeLeon* v. *Comcar Indus., Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003). Here, Cannon-Stokes admits she had knowledge of her undisclosed claims. But whether she was motivated to conceal is not self-evident as Potter suggests. Although a debtor in bankruptcy might be motivated to hide assets in order that they not be recovered for the benefit of creditors, that seems unlikely here. Plaintiff professes an innocent reason for the non-disclosure, that she was misinformed. Moreover, for Cannon-Stokes to have thought that she could hide this asset would have been naive in the extreme. After the completion of the administrative proceeding, she filed her *pro se* complaint in the same court house as that in which her bankruptcy petition had been filed. The complaint is a public record, easily discovered as Potter can attest. Furthermore, if Cannon-

8

Stokes is charged with knowledge of the law, as Potter would have it, she also would know that the trustee is authorized under 11 U.S.C. § 350 and Federal Rule of Bankruptcy Procedure 5011 to reopen the bankruptcy case to administer assets in order to capture any monetary recovery she might obtain in her law suit.[3] The undisputed facts point to a conclusion that plaintiff was not in bad faith in failing to disclose her claim.

Furthermore, the court is not persuaded that judicial estoppel serves the interest of justice in the circumstances presented here. As binding precedent from the Seventh Circuit makes clear, intentional wrongdoing is the focus of judicial estoppel, *In re Cassidy*, 892 F.2d at 641, *Chaveriat*, 11 F.3d at 1428, and there is little to support such an intentional wrongdoing theory here. This conclusion should in no way mean to minimize the significance of full disclosure in bankruptcy actions, and the court certainly does not condone the nondisclosure that took place here. However, as the court accepts Cannon-Stokes' statement that she disclosed her claim to her attorney and she relied on his expertise in preparing her bankruptcy petition, and in light of the capacity of the trustee to reopen her bankruptcy case if he deems it prudent, the court is unable to find the intentional misconduct that would invoke a penalty foreclosing her claims in this court.

## CONCLUSION

For the reasons stated above, Potter's motion [#18] is denied. Potter is directed to answer the Amended Complaint by March 25, 2004. A status hearing/scheduling conference is set for

---

[3]*See Guenther* v. *Snap-On Tools Corp.*, No. 90 C 4436, 1995 WL 137061, at *12 (N.D. Ill. March 28, 1995). The Eleventh Circuit rejected the notion that reopening a bankruptcy case would cure a failure to disclose, stating that allowing a debtor to "back-up, re-open [a] bankruptcy case, and amend . . . bankruptcy filings, only after [an] omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them." *Burnes*, 291 F.3d at 1288. In that case, however, the court did note that there was "sufficient evidence to infer intentional manipulation" by the debtor. *Id.* at 1287. The circumstances here are quite different.

April 20, 2004. Plaintiff's counsel is directed to send a copy of this decision to Alexander F.

Knopfler and to the United States Bankruptcy Trustee.

ENTER: _____

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: March 4, 2004